STATE OF NORTH CAROLINA v. KEVIN E. LAKE

No. 82

(Filed 27 January 1982)

1. **Criminal Law § 92.5— antagonistic defenses of two defendants—denial of motion for severance**

   The trial court did not abuse its discretion in the denial of defendant's motion for severance from a joint murder trial with a codefendant, although the testimony of defendant and the codefendant was conflicting upon material facts and their defenses were admittedly antagonistic, where the codefendant was subjected to vigorous cross-examination by defendant's counsel, the State

---

offered other sufficient evidence of defendant's guilt of the murder, and the codefendant could have testified about the very same incriminating matters at defendant's separate trial.

**2. Bills of Discovery § 6— written statement of witness not subject to discovery**

In a prosecution for murder, a written statement of a State's witness who was also charged with the murder was not discoverable by defendant under provisions of G.S. 15A-903(b)(2) requiring the disclosure of statements of a codefendant where the witness was not a codefendant being jointly tried with defendant. Nor was the statement discoverable under G.S. 15A-903(d) as a document or tangible object material to the preparation of a defense since the State could properly resist discovery of its witness's statement under G.S. 15A-904(a).

**3. Criminal Law § 128.2— questioning of defense witness by police officers—motion for mistrial**

The trial court in a first degree murder case did not err in the denial of defendant's motion for mistrial made on the ground that a defense witness was improperly questioned on the night before trial by two police detectives at the police department where the court found upon supporting voir dire evidence that the two detectives interviewed the witness to determine what testimony the witness was prepared to give in the case with respect to statements made by defendant to the witness while in jail, and that the officers did not threaten or intimidate the witness.

**4. Criminal Law §§ 102.3, 128.2— improper jury argument by prosecutor—curative instructions—mistrial denied**

The trial court did not abuse its discretion in denying defendant's motion for a mistrial because the district attorney in his jury argument attempted to discredit two defense witnesses by asserting certain facts which were not included in the evidence presented at trial where the court immediately sustained defendant's objection to the challenged argument and plainly instructed the jury to disregard the inappropriate statements in its deliberations.

ON appeal as a matter of right from the judgment of *Rouse, J.,* entered at the 10 September 1980 Criminal Session, ONSLOW Superior Court. Defendant received a sentence of life imprisonment for his conviction of first degree murder.

Defendant was charged in an indictment, proper in form, with the first degree murder of Vincent H. Tubby. Defendant pleaded not guilty to the charge.

In pertinent part, the State's evidence tended to show the following. Vincent Tubby was arrested for possession of marijuana and placed in the Onslow County jail on the evening of 5 March 1980. Tubby was released a short while later, at about

10:30 p.m., after he posted a cash bond. During this time, defendant and several of his friends, including Peter Abrams, Toby Locke and Kirby Warren, were also present at the jail. All of these men, including the defendant, were Marines. They had been drinking at some bars and, according to Abrams' testimony, smoking some of defendant's marijuana. They had come to the jail to post bail for another Marine companion. As the group waited in the magistrate's office for this purpose, Vincent Tubby sat nearby.

A personal skirmish developed between defendant and Tubby after Tubby spat on the floor twice. Defendant grabbed Tubby by the shirt, and the two engaged in a face-to-face confrontation. At that point, a police officer told them "to take it elsewhere." Tubby and defendant, followed by Warren, left the jail building. Abrams also went outside a few minutes later.

When Abrams located defendant and Warren, he found them kicking Tubby, who was lying on the ground. Abrams asked what was going on, and defendant responded that "he was teaching a punk a lesson . . . this M.F. deserves to get his ass beat." Abrams then joined in kicking Tubby about his head and groin (in the process, Abrams' sneakers and socks became bloody). During this attack, defendant took some money from Tubby's pocket. Tubby did not resist his assailants; consequently, Abrams and Warren discontinued their assault upon him and left the immediate area. However, defendant remained with Tubby.

When Abrams went back to get defendant, he saw defendant "crouching down over Tubby, making a pushing motion toward his chest." When defendant stood up, Abrams saw a knife in his hand. Defendant, Abrams and Warren left the vicinity and returned to Locke's jeep to go back to the base. Abrams later asked defendant if he had killed Tubby, and defendant replied, "dead men don't talk."

During the drive back to the base, Locke heard Abrams ask defendant "how much he got," and defendant say "a couple of bucks." Defendant also said that "he stabbed the guy good" and had "killed a couple of Negroes in Boston and got away with that." Defendant further boasted to his companions that "[h]e would get away with this" and warned them not to say anything about the incident because they were accessories, and he would "get" them for it. While defendant made these statements, Locke

saw him flipping and playing with his knife, a knife which he always carried upon his person.

Sometime after their return to the base, defendant gave Locke his pants and told him to throw the clothing in the dumpster. As Locke was doing so, a wallet and some papers fell out of the pants. Locke ripped up the papers and threw them, along with the wallet, into a nearby wooded area.

The body of Vincent Tubby was discovered at 2:00 a.m. on 6 March 1980. An autopsy later disclosed that he had died as a result of multiple stab wounds to the back and chest. Defendant, Abrams, Locke and Warren were all subsequently arrested for Tubby's murder.

When defendant was arrested, his boots and knife were taken and subjected to laboratory analysis. Tests indicated the presence of blood on these items. It was also established that a boot print at the scene of the homicide could have been made by defendant's boot.

On 11 August 1980, the trial court, over defendant's objection, granted the State's motion to join defendant and Abrams for trial. Defendant later moved for severance of the cases, but the court denied the motion on 2 September 1980.

At their joint trial, both defendant and Abrams testified; however, their individual versions of the events surrounding the encounter with decedent were quite different. For instance, defendant testified that he had not smoked any marijuana that night; that he merely had a fist fight with the victim; that he did not kick, rob or stab the victim; that he was not carrying his knife on that occasion; that he left the scene while Abrams, Warren and Locke were still kicking the victim; that when the others came back to the jeep, Locke said to him, "We took care of him;" and that he did not ask Locke to dispose of a pair of his pants after the group returned to the base. Defendant also denied that he made any incriminating statements concerning the assault to either Locke or Abrams.

Upon all of the evidence presented, the jury found defendant guilty as charged. He was sentenced to life imprisonment.

Other facts, which become relevant to defendant's specific assignments of error, shall be incorporated into the opinion below.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Elizabeth C. Bunting, for the State.*

*Cameron and Cameron, by William M. Cameron, Jr., R. Lynn Coleman and W. M. Cameron, III, for defendant-appellant.*

COPELAND, Justice.

Defendant argues four assignments of error in his brief. Our review of the factual circumstances of this record and the law applicable thereto does not, however, disclose prejudicial error requiring a new trial. We therefore affirm defendant's conviction for first degree murder.

[1] Defendant first contends that the trial court erred in failing to grant his motion for severance from a joint murder trial with Abrams. We disagree.

To begin with, we hold that the cases of defendant and Abrams were properly joined for trial pursuant to G.S. 15A-926(b)(2) since both were charged with accountability for the same offense. That being so, it is clear that the disposition of defendant's subsequent motion for a separate trial was a matter governed by the judge's sound discretion. *State v. Allen,* 301 N.C. 489, 272 S.E. 2d 116 (1980); *State v. Slade,* 291 N.C. 275, 229 S.E. 2d 921 (1976). Our Court has held repeatedly that the ruling upon a motion for severance shall not be disturbed on appeal unless defendant demonstrates an abuse of judicial discretion which effectively deprived him of a fair trial. *See, e.g., State v. Porter & Ross,* 303 N.C. 680, 281 S.E. 2d 377 (1981); *State v. Crews,* 296 N.C. 607, 252 S.E. 2d 745 (1979); *State v. Smith,* 291 N.C. 505, 231 S.E. 2d 663 (1977); *see* G.S. 15A-927(c)(2). We find no such abuse here.

It is true that the testimony of Abrams and defendant was conflicting upon material facts, and their defenses were admittedly antagonistic. However, Abrams was subjected to vigorous cross-examination by defendant's counsel, and, more importantly, the State offered other sufficient evidence of defendant's guilt of the crime (in particular, the testimony of Toby Locke). It is also plain that Abrams could have testified about the very same in-

criminating matters at defendant's separate trial.[1] Under these circumstances, we cannot say, as a matter of law, that the antagonistic defenses of the co-defendants converted this joint trial into an impermissible evidentiary contest or combative spectacle which prevented the jury from rendering a fair adjudication of defendant's individual guilt. *See State v. Nelson*, 298 N.C. 573, 260 S.E. 2d 629 (1979), *cert. denied*, 446 U.S. 929, 100 S.Ct. 1867, 64 L.Ed. 2d 282 (1980); *State v. Cook*, 48 N.C. App. 685, 269 S.E. 2d 743, *petition for discretionary review denied*, 301 N.C. 528, 273 S.E. 2d 456 (1980). As there is an insufficient basis for finding that the judge abused his discretion in denying severance, the assignment of error is overruled.

[2] Defendant additionally argues that the trial court should have suppressed the State's evidence of Toby Locke's written statement because he was not afforded, as requested, an opportunity for pre-trial discovery of its contents pursuant to G.S. 15A-903(b) and (d). Defendant's position is untenable. We agree that G.S. 15A-903(b) and (d) generally require the State to disclose the statements of a co-defendant and documents or tangible objects which are material to the preparation of the defense. However, neither of these discovery provisions applies in the instant case. First, the State did not have to reveal the statement's contents under G.S. 15A-903(b)(2) because Locke, although charged with the same murder, was not a co-defendant being *jointly* tried with defendant. *State v. Moore*, 301 N.C. 262, 271 S.E. 2d 242 (1980). Second, the State had no statutory duty to divulge the prior recorded statement of Locke under G.S. 15A-903(d) because Locke was testifying for the prosecution (under an offer of immunity), and the State could properly resist discovery of its witness's statement under G.S. 15A-904(a). *State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978); *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977). In sum, we hold that Locke's statement was not discoverable by defendant under G.S. 15A-903; consequently, the statement was correctly admitted into evidence to corroborate Locke's in-court testimony.

---

1. Defendant made a subsidiary argument concerning the trial court's failure to limit the admissibility of Abrams' pre-trial statement. However, defendant did not request a limiting instruction; thus, he is not entitled to complain of its omission on appeal. *See State v. Case*, 253 N.C. 130, 137, 116 S.E. 2d 429, 434 (1960), *cert. denied*, 365 U.S. 830, 81 S.Ct. 717, 5 L.Ed. 2d 707 (1961).

Defendant's next assignment of error states that "[t]he trial judge abused his discretion by denying defendant's *numerous motions for mistrial* due to improper conduct on the part of the district attorney." (Emphasis added.) The record shows that defendant specifically moved for a mistrial only *twice*, yet this assignment attempts to incorporate, for our consideration, *seventeen* exceptions taken by defendant at various times throughout the trial. Only two of those exceptions, nos. 3 and 22, were directed to the denial of defendant's motions for a mistrial. It is, therefore, appropriate that we limit our review of this assignment of error to the specific matters challenged by exceptions 3 and 22. *See* North Carolina Rules of Appellate Procedure, Rule 10(a) ("no exception . . . which is not made the *basis* of an assignment of error may be considered on appeal"); Rule 10(c) ("[e]ach assignment of error . . . shall, so far as practicable, be confined to a single issue of law"); Rule 28(b)(3) (content of appellant's brief: "[i]mmediately following each question shall be a reference to . . . exceptions *pertinent* to the question").

[3] With regard to exception no. 3, defendant essentially contends that the trial court should have ordered a mistrial upon the ground that a defense witness had been improperly questioned, on the night before trial, by two detectives of the Jacksonville Police Department at the behest of the district attorney. We disagree. The trial court conducted a prompt and thorough *voir dire* hearing investigating defendant's allegation. The two detectives involved and the witness interviewed by them were subjected to full examination by both the defense and prosecution. At the conclusion of its investigation, the court entered the following order:

> From the evidence offered on the voir dire the Court makes the following findings of fact: Ronnie Guthrie, a witness under subpoena by the defendant, was returned from the Department of Correction to the Onslow County Jail on Tuesday, September 2, and has remained there since that time.
>
> 2. At the request of the District Attorney, Detectives Delma Collins and W. T. Whitehead interviewed Guthrie in the Onslow County Jail on the night of Wednesday, September 3.

The purpose of the interview was to determine what testimony Guthrie was prepared to give in this case with respect to what one Kevin Lake had said at the time that Guthrie was in the Onslow County Jail with Lock (sic) and the defendant Lake. Guthrie did talk to the officers in the conference room at the Onslow County Jail. The officers did not threaten or intimidate Guthrie. The motion for mistrial is denied.

It is axiomatic that the trial court's findings entered upon a *voir dire* hearing are conclusive and binding on appeal if they are supported by competent evidence. *See State v. Thompson,* 303 N.C. 169, 277 S.E. 2d 431 (1981); *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966), *cert. denied,* 386 U.S. 911, 87 S.Ct. 860, 17 L.Ed. 2d 784 (1967). It would serve no useful purpose for us to recap the content of the witnesses' testimony[2] heard by the judge. It suffices to say that we have carefully reviewed the pertinent portions of the record and find therein ample competent evidence to sustain the judge's findings; therefore, it does not affirmatively appear that the judge abused his discretion in denying the motion for a mistrial in this respect.

[4]   With regard to exception no. 22, defendant essentially maintains that he was entitled to the declaration of a mistrial because the district attorney, in his closing argument to the jury, attempted to discredit two defense witnesses by asserting certain facts which were not included in the evidence presented at trial. It is, of course, well established that, although wide latitude is permitted in jury argument, counsel may not transcend the bounds of fundamental fairness and argue extraneous facts or law *not* properly in evidence. *State v. Wright,* 304 N.C. 349, 283 S.E. 2d 502 (1981); *State v. Lynch,* 300 N.C. 534, 268 S.E. 2d 161 (1980). The district attorney committed this very transgression in the instant case. However, the judge immediately sustained defendant's objection to the challenged argument and plainly instructed the jury to disregard the inappropriate statements in its deliberations. This curative instruction adequately averted any possible prejudice to defendant. *State v. Sanders,* 303 N.C. 608, 281 S.E. 2d 7 (1981); *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976).

2. This evidence consumes fifteen pages of the printed record on appeal.

For this reason, we conclude that the judge did not abuse his discretion in failing to grant a mistrial for the district attorney's impropriety.

Defendant finally contends that the cumulative effect of various errors at trial, including those we have discussed, resulted in the denial of a fair trial; thus, the trial court erred in denying his motion for appropriate relief. This contention lacks merit and is overruled.

In conclusion, we find no prejudicial error in defendant's trial, and the judgment of life imprisonment is affirmed.

No error.