STATE OF NORTH CAROLINA v. WILLIAM WAYNE McGEE AND MICHAEL CORNELL SMITH

No. 8221SC649

(Filed 15 February 1983)

1. **Attorneys at Law §§ 4, 6— testimony that attorneys involved in crime being tried—denial of attorneys' motion to withdraw error**

    In a prosecution for conspiracy to traffic cocaine, the trial judge erred in refusing to allow defendants' attorneys to withdraw after a State's witness testified that the attorneys were involved in the illegal drug operation. The facts were sufficient under G.S. 15A-144 to show "good cause" so as to justify withdrawal where the facts tended to show that the State's witness irreparably damaged defendant's defense by accusing his attorneys of unlawful acts, it appeared that defendant's counsel was surprised by the State's witness's testimony, and another attorney was prepared to take over the defense.

2. **Criminal Law § 92.5— motion to sever improperly denied**

    In a prosecution for conspiracy to traffic cocaine, the trial court erred in failing to sever one defendant's trial from that of the other defendant where the other defendant's attorneys were linked by the testimony of a State's witness to the drug dealing involved. G.S. 15A-927(c)(2).

3. **Criminal Law § 7.1— defense of entrapment having no application to case**

    In a prosecution for conspiracy to traffic cocaine, the defense of entrapment had no application to defendants' cases where the evidence tended to

show that one defendant first suggested cocaine as a way to make money and that defendant brought the other defendant into the matter. Further, one defendant's contention that because the other defendant was entrapped, he should be absolved of any guilt was unpersuasive, since there is no derivative entrapment doctrine.

APPEAL by defendants from *Walker (H. H.), Judge.* Judgment entered 20 November 1981 in Superior Court, FORSYTH County. Heard in the Court of Appeals 11 January 1983.

The defendants were indicted by a grand jury for conspiracy to traffic cocaine, a Schedule II controlled substance, in violation of G.S. 90-95(h)(3)(a). Both pled not guilty and were tried before a jury.

The State's primary witness was Ann Toms. She was hired by the Winston-Salem Police Department in August 1981 to participate in an undercover drug operation.

On 24 August 1981, Toms met the defendant McGee at his office at the Convention Center in Winston-Salem. She contacted McGee after the police gave his name to her. The two discussed Toms' plans for a fashion show. Toms stated that she wanted to make money off of the show. At this meeting, she showed McGee a bank deposit slip that made it appear that she had $50,000 in her account. The Vice Division of the police department had arranged the deposit.

Toms called McGee on 26 August and told him that she was interested in making her money work for her. She expressed concern over the risk involved with a way to make money that her nephew had suggested. McGee responded, "Say no more. I know what you're talking about, and it's very risky. . . . We can talk about it later."

After McGee called Toms to set a meeting time, the two met at the Convention Center on Saturday, 29 August. McGee asked Toms how she felt about making a 35 percent return on $10,000 in 30 days and told her that he was talking about investing in cocaine. When Toms expressed concern about the risk involved, McGee told her that she would be an investor like him and not have to touch the drugs.

McGee made a telephone call and then informed Toms that 116 grams of cocaine would cost $7,800. McGee told her that he

had called a young man named Michael, with whom he had before done business. Michael was going to California two days later.

Toms testified that McGee mentioned that two attorneys were also involved in the operation and knew what to do if anything happened. Toms then showed him $3,000 in cash that she had with her.

On 31 August, Toms met McGee at a Winston-Salem restaurant. She requested the meeting in order that she could meet Michael. At the restaurant, a man came to the table and introduced himself as Michael Smith.

Smith told Toms that he normally did not meet with investors or deal in amounts of money less than $25,000. Toms told Smith that she wanted her nephew, who was outside in the car, to hear the details of the plan. Smith reluctantly agreed. The nephew was State Bureau of Investigation Special Agent J. F. Bowden.

McGee talked with Bowden about becoming part of the operation. He told Bowden that he should call Carl Parrish and Bob Tally, two attorneys that McGee said were part of the operation, if he got caught. Parrish and Tally were counsel for McGee at the trial of this case.

Toms and Bowden went to the Convention Center later in the afternoon of 31 August and gave McGee $3,000. Of that total, $1,000 was designated as travel money for Smith to go to California.

On 1 September, Smith picked up the $3,000 from McGee at the Convention Center and then went to Toms' apartment. Toms and Bowden gave Smith $5,700, which he put in a satchel. As Smith left the apartment, he was arrested. McGee was arrested on the same day.

Toms testified that she had been convicted of writing worthless checks and for obtaining property by false pretenses. She also discussed a book that she wrote about her experiences during this case.

Special Agent Bowden's testimony corroborated what Toms stated in her testimony.

McGee's attorneys Parrish and Tally made a motion to withdraw because Toms had linked them to the drug dealing and other illegality. The attorneys sought to withdraw because they wanted to testify to refute Toms' statements. The motion was denied. McGee also made a motion to allow Tally and Parrish to withdraw. In the motion, he stated that Harrell Powell, Jr. was prepared to represent him in the case and sought to have Powell substituted as counsel. The court denied the motion.

A number of tapes that contained telephone and meeting conversations among the participants in the case were played for the jury.

McGee's testimony was similar to what Toms said. Although McGee testified that he resisted involvement in anything illegal, he finally gave in to the temptation. He stated:

> I'm sure the show of the money on Saturday morning, along with all of the other pressures of saying no, the invitations and so forth, I guess maybe I just decided that that Saturday morning the apparent show of money and considering my financial situation, I guess it was just a little bit more than, I guess I just could not withstand the temptation of the cash money and the deal that was being offered. I'm sorry.

After deciding to be a part of the illegality, McGee called Smith and got prices for the drugs. McGee denied using, selling, or talking about cocaine prior to the meetings with Toms. He had no prior criminal record.

Defendant Smith did not testify but he did present character witnesses.

Motions by both defendants to dismiss and to direct a verdict were denied by the trial judge.

Both defendants were found guilty by the jury of conspiracy to traffic in cocaine. Each was given a sentence of seven years and fined $50,000. Both defendants then appealed to this Court.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Thomas B. Wood, for the State.*

*Powell and Yeager, by Harrell Powell, Jr., and David E. Crescenzo, for defendant McGee.*

*Nancy S. Mundorf for defendant Smith.*

ARNOLD, Judge.

Four identical arguments are raised by both defendants. Smith raises four additional contentions. But because of our disposition of this case, we find it necessary only to discuss two arguments.

[1] McGee argues that his attorneys should have been allowed to withdraw after Toms testified that they were involved in the illegal drug operation in this case. He contends that this was a denial of the right to effective assistance of counsel, as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 23 of the North Carolina Constitution. The record establishes that if McGee's counsel, Parrish and Tally, had been allowed to withdraw, they would have refuted Toms by testifying.

Withdrawal of an attorney in a criminal case in North Carolina depends upon a showing of good cause. G.S. 15A-144. The decision is in the court's discretion.

Because we find that it was an abuse of discretion by the trial judge to deny the motions to withdraw in this case, both defendants are entitled to a new trial.

McGee's appeal depends on the answer to the following questions: When a witness for the State testifies that the defendant's attorneys were involved in the illegality that is the subject of the trial, is it reversible error for the trial judge to deny the attorneys' motion to withdraw in order to deny the wrongdoing by testifying, given that another attorney was prepared to take over the defense? That is, do these facts show G.S. 15A-144 "good cause" so as to justify withdrawal?

Although research has located no North Carolina cases that squarely address the issue presented here, the Supreme Court in *Smith v. Bryant*, 264 N.C. 208, 141 S.E. 2d 303 (1965), addressed the attorney withdrawal issue. "Whether an attorney is justified in withdrawing from a case will depend upon the particular circumstances, and no all-embracing rule can be formularized." 264 N.C. at 211, 141 S.E. 2d at 305. *See* 7 Am. Jur. 2d *Attorneys at Law* § 173 (1980).

Two facts justify our decision to grant McGee a new trial. First, Toms irreparably damaged McGee's defense by accusing his

attorneys of unlawful acts. Once the statements were made, McGee's attorneys could only refute them by testimony. The taint of wrongdoing that was attached to McGee's attorneys made any attempt to continue the defense almost futile. Juries normally separate any illegality committed by a defendant from his attorney. But when the attorneys are also linked to the crime by testimony, they become ineffective advocates.

Second, it appears that McGee's counsel was surprised by Toms' testimony. There is a statement by the District Attorney when the motion was being heard that "Your Honor, [it would] be a different matter if these attorneys had not been forewarned what the facts of the case would be before they came in here." But this statement by itself does not show pretrial knowledge. As a result, the case *sub judice* is distinguishable from *State v. Brady,* 16 N.C. App. 555, 192 S.E. 2d 640 (1972), *cert. denied,* 282 N.C. 582, 193 S.E. 2d 745 (1973), where a motion to withdraw was denied because the attorney knew before trial that he might be a witness.

It is also notable that once Toms implicated McGee's attorneys in the crime, they prepared another attorney to take over the defense. The motion to withdraw was not used as a delay tactic. Whether another attorney is prepared to take over the defense without delay is a factor to be considered in the withdrawal decision. *State v. Potts,* 42 N.C. App. 357, 256 S.E. 2d 497 (1979).

When the motion to withdraw was denied, a motion for a mistrial by either defendant would have been appropriate. G.S. 15A-1061. In fact, perhaps the trial judge should have declared a mistrial *ex mero motu.* G.S. 15A-1061 and -1063. If granted, such a motion would have saved the time and expense of completing a trial at which the defendants were already substantially and irreparably prejudiced by Toms' testimony. But failure of either defendant to make such a motion will not prevent us from rendering appropriate relief.

We note that there is authority for our grant of a new trial because of refusal to allow an attorney to withdraw. *See* 81 Am. Jur. 2d *Witnesses* § 98.5 (1976); Annot., 52 A.L.R. 3d 887 (1973); 7 C.J.S. *Attorney and Client* § 110 (1937).

Because "the roles of an advocate and of a witness are inconsistent," Code of Professional Responsibility, EC 5-9, we find that McGee was denied his constitutional right to the effective assistance of counsel when his attorneys were not allowed to withdraw.

[2]  Although refusal to allow McGee's counsel to withdraw may not alone justify granting Smith a new trial, the denial of Smith's motion to sever his trial from McGee's was reversible error.

G.S. 15A-927(c)(2) provides that a severance of defendants is proper when it is "necessary to promote a fair determination of the guilt or innocence . . ." of a defendant. Such a ruling is in the trial judge's sound discretion. *State v. Lake,* 305 N.C. 143, 286 S.E. 2d 541 (1982). The ruling will not be disturbed on appeal absent a showing by the defendant of abuse of judicial discretion that effectively deprived him of a fair trial. *State v. Porter & Ross,* 303 N.C. 680, 281 S.E. 2d 377 (1981). Whether the ruling is proper depends on the circumstances of each case. *State v. Nelson,* 298 N.C. 573, 260 S.E. 2d 629 (1979), *cert. denied,* 446 U.S. 929 (1980).

The fact that Smith was being tried with McGee made a fair trial impossible, even though they had separate attorneys. Smith was linked to the taint surrounding McGee's attorneys by his presence in the same courtroom at the same table with McGee and his attorneys. This is true even though Toms testified that Smith's counsel was not involved in the crime.

Although the trial judge did instruct the jury that they should consider the verdicts in the two cases separately, the nature of conspiracy requires an agreement by two or more persons. The only person indicted for a criminal conspiracy here was McGee. Given McGee's lack of effective assistance of counsel and Smith's trial at the same time, the severance motion should have been granted.

[3]  Both defendants raise entrapment as a possible defense. That doctrine has no application in this case.

Toms testified that McGee first suggested cocaine as a way to make money, mentioned the high rate of return in a short period of time, and brought Smith into the matter. Thus, he was predisposed to commit this crime and no inducement by law en-

forcement officers to persuade him to commit the crime has been shown.

Smith contends that because McGee was entrapped, Smith should be absolved of any guilt. We know of no such derivative entrapment doctrine and find this argument unpersuasive and feckless.

We hold that both defendants are entitled to new trials for the reasons discussed above. But we do not make a ruling on whether they must be tried separately.

That determination should be made after a pretrial conference at which it should be determined if the State's evidence would prejudice the defendants as it did in the trial that is the basis of this appeal. The severance ruling is in the trial judge's discretion. *Lake*, 305 N.C. 143, 286 S.E. 2d 541.

New trial for both defendants.

Judges HILL and WHICHARD concur.