STATE OF NORTH CAROLINA v. WILLIAM CHRISTOPHER WILSON

No. 13

(Filed 6 April 1976)

**1. Criminal Law § 166— abandonment of assignments of error**

Questions raised by assignments of error but not presented and discussed in a party's brief are deemed abandoned. Rule 28, Rules of Appellate Procedure.

2. **Criminal Law § 66— in-court identification —..pretrial motion to suppress — necessity for objection**

   A pretrial motion to suppress identification testimony which the trial court has not heard and ordinarily will not hear until the testimony is offered at trial will not suffice to challenge the admissibility of in-court identification testimony, but defendant must make at least a general objection when such evidence is offered or request a *voir dire* to probe the competency of the proffered evidence for the trial judge to be required to conduct a *voir dire*, make findings of fact and determine whether the proffered testimony is admissible.

3. **Criminal Law § 66— lineup identification — in-court identification**

   There is nothing in the record of this rape and burglary case suggesting that a pretrial lineup was conducted in an impermissibly suggestive manner or that the victim's in-court identification of defendant was otherwise tainted by out-of-court identification procedures.

4. **Criminal Law § 161— exception to judgment**

   An exception to the judgment must fail if the judgment is within statutory limits and no fatal defect appears on the face of the record proper.

5. **Criminal Law § 157— record proper**

   Ordinarily, the record proper in criminal cases consists of the organization of the court, the charge contained in the information, warrant or indictment, the arraignment and plea, the verdict and the judgment.

6. **Burglary and Unlawful Breakings § 1— burglary defined**

   To warrant a conviction for burglary the State's evidence must show that there was a breaking and entering during the nighttime of a dwelling or sleeping apartment with intent to commit a felony therein; if the burglarized dwelling is occupied it is burglary in the first degree; if unoccupied, it is burglary in the second degree. G.S. 14-51.

7. **Burglary and Unlawful Breakings § 5— sufficiency of evidence of breaking**

   There was sufficient evidence of a breaking, both actually and constructively, to support a conviction of first degree burglary where the State's evidence tended to show that defendant knocked on the victim's door and asked the victim to open the door, the victim "cracked" her door to see who was there, saw defendant's face and attempted to shut it, and defendant forcefully opened the door, knocking the victim down in doing so, entered the dwelling, and raped the victim.

DEFENDANT appeals from judgments of *Alvis, J.,* 28 July 1975 Session, FORSYTH Superior Court.

Defendant was tried upon separate bills of indictment, proper in form, charging him with first degree burglary and

State v. Wilson

second degree rape of Reba J. Smith on 5 November 1974 in Forsyth County.

On 18 July 1975 defendant filed a written motion to suppress all evidence of Reba J. Smith's identification of defendant, whether said identification was photographic, lineup or of defendant in person. On the same date defendant filed a second motion to suppress certain "black and white pictures depicting the defendant in a state of emotional distress." These and other motions came to the attention of the trial judge in chambers. He disposed of the other motions and stated he would, during the course of the trial, deal with the motions to suppress identification of defendant and to suppress certain photographs defendant believed the prosecution would offer in evidence.

The State offered evidence tending to show that Reba J. Smith, a school teacher with five years' experience, lived in her own home at 6215 Brewer Avenue in the Town of Clemmons. On 2 November 1974 she was trimming her shrubbery in the front yard. Defendant drove by and waved at her. Without recognizing the person but thinking it was one of her neighbors, she waved back. The driver of the small white car turned it around and passed in front of Miss Smith's house a second time. This time, although she saw it, she didn't acknowledge the presence of the car. It continued to the intersection of Brewer Avenue with James Street where the driver again turned around, drove to Miss Smith's house and pulled into her yard. Although Miss Smith had only one arm, she continued to clip her shrubbery. Defendant asked why her husband wasn't trimming the shrubbery. She became suspicious and asked if he were a policeman. At first defendant said he was a policeman but later contradicted that statement. Defendant asked if he could help her. She had not requested help and answered in the negative. She did not know defendant and had never seen him before that date. Defendant remained in her presence for about fifteen minutes and repeatedly offered to help her. Miss Smith observed defendant's facial features, noticed the gaps in his teeth, and noted that he was wearing a white formless hat and a blue blazer jacket. Finally, not wanting to be rude but desiring to dismiss him from her presence, Miss Smith told him she had a date that night and had to start getting dressed for the evening. Defendant said, "Well, I'll see you later, baby," and drove away in his small white car.

Two days later, on the evening of 4 November 1974, Miss Smith had retired for the night. In the early morning hours of 5 November 1974, around 2 a.m., Miss Smith was awakened by a knock at her front door. She turned on the bedroom lamp, made her way to the front door, and asked who was there. The response was, "It's me." She again asked, "Who is there?" and the response was "Open the door, it's me." Miss Smith then turned on the porch light and intended to crack the door to see who was there. Without knowing whether the storm door was latched from the inside, she cracked the door, saw defendant's face, and attempted to shut it. However, defendant instantly "slammed it open on me, pushing me down into the floor."

Miss Smith screamed and fought desperately despite the fact she had only one arm. When she kept screaming defendant punched her in the mouth and nose with his fist and she tasted blood. She grabbed him by the mouth and scratched his face. One of her fingers slipped inside his mouth and he bit it through the knuckle. Although she continued to fight and scream, defendant pinned her down and by superior force completed the rape. After defendant left she ran to the window and saw a small white car drive away. She ran to a nearby neighbor's house, told them what had happened, and officers were summoned. Miss Smith testified: "I have no doubt that the defendant is the one that raped me on the 5th day of November 1974. I will never forget his face as long as I live."

The State offered further evidence tending to show that defendant did not report for work at his place of employment on 5 November 1974 and when he did report for work he had a patch on his face.

Defendant testified as a witness in his own behalf. He said he saw Reba J. Smith clipping shrubbery at her home on Saturday, 2 November 1974. He thought she waved at him so he turned around and stopped at her house. He said he told her that her husband ought to be doing that type of work and she replied, "I don't have no husband." When she declined his offer to help, he drove away. He testified he never saw her on Tuesday, 5 November 1974 and denied that he ever had sexual intercourse with her. He stated unequivocally that he did not break into her house on the night in question and neither raped nor assaulted her. He said that on the night of 5 November 1974 he was with his girl friend Shirley Gregory at her home; that she kept nagging him about getting married, they called each

other names, and in the fuss which ensued she scratched his face and neck rather badly. Then, a little after midnight they had sexual relations on the couch and he went to sleep. Shirley awakened him about 1:30 a.m. and he went home. He testified that he and Shirley had since married on 1 April 1975.

Shirley Gregory's testimony corroborates the defendant. His parents testified that he arrived home that night at about 1:45 a.m. Defendant offered numerous witnesses who testified to his good character and reputation in the community where he lived.

The jury convicted defendant of first degree burglary and second degree rape. Sentences of life imprisonment for the burglary and sixty years for the rape were pronounced. Defendant appealed directly to the Supreme Court in the burglary case, and we certified his rape conviction to this Court to the end that both cases receive initial appellate review by the same court.

*Laurel O. Boyles, attorney for defendant appellant.*

*Rufus L. Edmisten, Attorney General; James E. Magner, Assistant Attorney General; Cynthia Jean Zeliff, Associate Attorney, for the State of North Carolina.*

HUSKINS, Justice.

[1] Questions raised by assignments of error but not presented and discussed in a party's brief are deemed abandoned. Rule 28, Rules of Appellate Procedure. In this case the record on appeal contains seven assignments of error but only Nos. 2 and 7 are discussed in defendant's brief. Under the cited rule all other assignments are deemed abandoned.

[2] Defendant's pretrial motion to suppress the testimony of Reba J. Smith identifying defendant as the burglar and rapist was based on the ground that she had seen pictures taken of defendant by the police and her identification was based on her memory of him from the pictures rather than on her memory of him from the events which occurred in the early morning hours of 5 November 1974 in her home. This motion was brought to the attention of the trial judge when the case was called. The judge stated he would.deal with that motion during the course of the trial. Thereafter, defendant was arraigned and pled not guilty in each case. Reba J. Smith was called as the first witness for the State. In her testimony on direct examination, covering fourteen pages of the record, she positively identi-

fied defendant as the man who stopped in her yard on 2 November 1974 and thereafter forced his way into her home and raped her on 5 November 1974. After describing the assault upon her, she said: "I have no doubt that the defendant is the one that raped me on the 5th day of November 1974. I will never forget his face as long as I live." She was then cross-examined and much of the cross-examination tended to challenge her identification testimony. No objection to her in-court identification of defendant was ever interposed and no request was ever made for a voir dire examination of the witness. As a result the trial judge conducted no voir dire, found no facts, and never ruled on the pretrial motion to suppress Miss Smith's in-court identification of defendant. Defendant assigns these omissions by the trial judge as prejudicial error requiring a new trial.

Under the circumstances narrated above, no ruling on the pretrial motion to suppress was required. "When the State offers a witness whose testimony tends to identify the defendant as the person who committed the crime charged in the indictment, and the defendant interposes timely objection and requests a *voir dire* or asks for an opportunity to 'qualify' the witness, such *voir dire* should be conducted in the absence of the jury and the competency of the evidence evaluated. Upon such hearing, if the in-court identificaton by a witness is challenged on the ground it is tainted by an unlawful out-of-court photographic or corporeal identification, all relevant facts should be elicited and all factual questions determined, including those involving the defendant's constitutional rights, pertinent to the admissibility of the proffered evidence." *State v. Accor* and *State v. Moore*, 277 N.C. 65, 175 S.E. 2d 583 (1970).

We said in *State v. Cook*, 280 N.C. 642, 187 S.E. 2d 104 (1972) ; "In the present case, as above noted, there was no objection to the initial in-court identification of the defendant by this witness and there was no request for a voir dire. This assignment is without merit." So it is here.

The rule requiring timely objection to in-court identification testimony is further sustained by the following language from *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975) :

"Similarly, there is no merit to the argument that the trial court erred in admitting *without a voir dire examination* the testimony of this witness concerning Mrs. Ferguson's identification of a photograph of defendant prior to

trial. Mrs. Ferguson on direct examination had already made an in-court identification of defendant and on cross-examination she gave explicit testimony of the pretrial identification, all without objection or a request for a voir dire examination. Moreover, there is nothing whatever in the record suggesting this pretrial procedure was conducted in an impermissibly suggestive manner. Under these circumstances a voir dire examination was not necessary, especially since one was not requested at the time objection was made to the testimony of Detective Moore."

It does not suffice merely to file a pretrial motion to suppress evidence which the trial judge has not heard and ordinarily will not hear until it is offered at trial. To challenge the admissibility of in-court testimony defendant is required to interpose at least a general objection when such evidence is offered. *State v. Haskins,* 278 N.C. 52, 178 S.E. 2d 610 (1971). Absent such objection or a request for a voir dire to probe the competency of the proffered evidence, the trial judge is not required to conduct a voir dire, make findings of fact and determine whether the proffered testimony meets the test of admissibility. An objection to the admission of evidence is necessary to present defendant's contention that the evidence was incompetent. *State v. Camp,* 266 N.C. 626, 146 S.E. 2d 643 (1966). "Failure to object in apt time to incompetent testimony results in a waiver of objection so that admission of the evidence will not be reviewed on appeal unless the evidence is forbidden by statute or results from questions asked by the trial judge or a juror." *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534, *cert. denied* 400 U.S. 946, 27 L.Ed. 2d 252, 91 S.Ct. 253 (1970). *See* 1 Stansbury's North Carolina Evidence, § 27 (Brandis rev. 1973).

[3]  Even so, we have carefully examined the record to ascertain whether any pretrial identification procedure was conducted in an impermissibly suggestive manner. We find nothing prejudicial. Miss Smith described defendant to the police immediately after she was raped. She told the officers that the black man who drove into her yard on 2 November 1974 was the same man who invaded her home at 2 a.m. on 5 November 1974 and raped her. She said he was about 5 feet 8 to 9 inches tall, weighed 140 to 150 pounds, was in his early twenties, had a gap between his two front teeth, wore a white formless hat and was driving a small white car. She stated that she could definitely identify him when she saw him.

Defendant requested a lineup after he was taken into custody, and Miss Smith viewed the lineup composed of six black men, each holding a number from one to six. Defendant was permitted to choose his position in the line and to choose the number he would hold. Miss Smith immediately identified defendant as her assailant. There is nothing in the record whatsoever suggesting that the lineup was conducted in an impermissibly suggestive manner or that Miss Smith's in-court identification of defendant was otherwise tainted by out-of-court identification procedures.

There is no merit in this assignment of error and it is overruled.

Defendant contends the trial court erred in signing and entering the judgments appearing of record. This constitutes the seventh and final assignment discussed in his brief.

[4, 5] An exception to the judgment must fail if the judgment is within statutory limits and no fatal defect appears on the face of the record proper. *State v. Cox,* 281 N.C. 131, 187 S.E. 2d 785 (1972) ; *State v. Elliott,* 269 N.C. 683, 153 S.E. 2d 330 (1967). Ordinarily, the record proper in criminal cases consists of the organization of the court, the charge contained in the information, warrant or indictment, the arraignment and plea, the verdict and the judgment. *State v. McClain,* 282 N.C. 357, 193 S.E. 2d 108 (1972) ; *State v. Tinsley,* 279 N.C. 482, 183 S.E. 2d 669 (1971).

The record discloses that the indictments are proper in form, the verdicts were properly returned and the judgments are within statutory limits. G.S. 14-21; G.S. 14-52. Moreover, we note parenthetically that the verdicts and judgments are supported by the evidence.

[6] To warrant a conviction for burglary the State's evidence must show that there was a breaking and entering during the nighttime of a dwelling or sleeping apartment with intent to commit a felony therein. *State v. Mumford,* 227 N.C. 132, 41 S.E. 2d 201 (1947). If the burglarized dwelling is occupied it is burglary in the first degree; if unoccupied, it is burglary in the second degree. G.S. 14-51; *State v. Frank,* 284 N.C. 137, 200 S.E. 2d 169 (1973) ; *State v. Allen,* 279 N.C. 115, 181 S.E. 2d 453 (1971).

[7] A "breaking" is an essential element of the crime of first degree burglary. Defendant's entry was accomplished by a

"breaking" notwithstanding the fact that the prosecuting witness "cracked" her door to see who was there. "If any force at all is employed to effect an entrance through any usual or unusual place of ingress, whether open, partly open, or closed, there is a breaking sufficient in law to constitute burglary, if the other elements of the offense are present." 13 Am. Jur. 2d, Burglary § 8 (1964). *See People v. White,* 153 Mich. 617, 117 N.W. 161 (1908). "We think, . . . that to hold that the opening of a door or window which is closed but not fastened is sufficient evidence of breaking, but that the further opening of a door or window partly open, in order to gain an entrance is not sufficient evidence, is a useless refinement." *Goins v. State,* 90 Ohio St. 176, 107 N.E. 335 (1914). We concur, especially in the factual context of this case where entrance was obtained by the use of force and violence.

A breaking may be actual or constructive. In *State v. Rodgers,* 216 N.C. 572, 5 S.E. 2d 831 (1939), defendants challenged the sufficiency of the evidence to sustain a verdict of burglary in the second degree, contending there was no "breaking" as is required in burglary. The evidence disclosed that defendants encountered the owner of a dwelling house immediately outside the house in the nighttime, marched him into the house at the point of a gun and stole money which was hidden therein. Held: The evidence was properly submitted to the jury on the theory of a constructive breaking. *Accord, State v. Foster,* 129 N.C. 704, 40 S.E. 209 (1901).

"Constructive breaking, as distinguished from actual forcible breaking, may be classed under the following heads:

"1. When entrance is obtained by threats, as if the felon threatens to set fire to the house unless the door is opened.

"2. When, in consequence of violence commenced, or threatened in order to obtain entrance, the owner, with a view more effectually to repel it, opens the door and sallies out, and the felon enters.

"3. When entrance is obtained by procuring the servants or some inmate to remove the fastening.

"4. When some process of law is fraudulently resorted to for the purpose of obtaining an entrance.

"5. When some trick is resorted to to induce the owner to remove the fastening and open the door, and the felon enters;

as, if one knocks at the door, under pretense of business, or counterfeits the voice of a friend, and, the door being opened, enters.

"In all these cases, although there is no *actual breaking,* there is a breaking in law or by construction; 'for the law will not endure to have its justice defrauded by such evasions.' In all other cases, when no fraud or conspiracy is made use of or violence commenced or threatened *in order to obtain an entrance,* there must be an actual breach of some part of the house." *State v. Henry,* 31 N.C. 463 (1849).

In light of the foregoing principles, we conclude that the evidence is sufficient to support a finding that defendant did, both actually *and* constructively, break and enter the occupied dwelling of Reba J. Smith during the nighttime with intent to commit a felony therein.

The sufficiency of the evidence to support the judgment in the rape case is beyond question and requires no discussion.

Since no error appears on the face of the record proper, the judgments will be sustained. *State v. Bumgarner,* 283 N.C. 388, 196 S.E. 2d 210 (1973); *State v. Williams,* 268 N.C. 295, 150 S.E. 2d 447 (1966). Evidence of defendant's guilt is overwhelming.

In the trial, verdicts and judgments we find

No error.