STATE OF NORTH CAROLINA v. FRANKLIN DWAYNE HOWELL

No. 12A92

(Filed 28 January 1994)

1. **Criminal Law § 133 (NCI4th)— first-degree murder—tender of guilty plea based on felony murder—acceptance not required**

Where there was evidence tending to show that a murder was committed while defendant was engaged in the commission of the felony of burglary, the trial court was not required to accept defendant's plea of guilty to first-degree murder based solely on the felony murder rule since this might preclude the use of the underlying felony as an aggravating circumstance.

**Am Jur 2d, Criminal Law §§ 486-491.**

2. **Criminal Law § 1298 (NCI4th)— first-degree murder—inability to show trigger man—appropriateness of death penalty**

Although the State indicated at a pretrial hearing that it would have trouble showing who was the trigger man in a murder, the decision of *Tison v. Arizona*, 481 U.S. 137, did not preclude a capital trial of defendant where the forecast of evidence at the hearing suggested that defendant was a major player in the events leading to the murder.

**Am Jur 2d, Criminal Law §§ 609 et seq.**

STATE v. HOWELL

[335 N.C. 457 (1994)]

3. **Searches and Seizures § 63 (NCI4th)— consent to search— sufficient evidence and findings**

The trial court's conclusion that defendant knowingly, voluntarily and intelligently consented to the search of his truck was supported by evidence and findings that a detective advised defendant that he was going to inventory his truck and have the same stored as evidence; defendant responded "O.K."; defendant understood that the detective was going to search his truck; and defendant signed a permission to search form.

**Am Jur 2d, Searches and Seizures § 83.**

4. **Indigent Persons § 26 (NCI4th)— capital trial—assistant counsel not de facto lead counsel**

Assistant counsel did not improperly act as lead counsel in defendant's capital trial so as to deprive defendant of his right to be represented by a lead counsel with "five years experience in the general practice of law" because the assistant counsel examined and cross-examined more witnesses and interposed more objections than lead counsel where the attorney appointed as lead counsel cross-examined a number of the State's key witnesses, argued points of law to the court, and made closing arguments at both the guilt-innocence and sentencing phases of the trial, and this attorney fully participated in the trial with the understanding of defendant, counsel, and the court that he was acting as lead counsel and that the less experienced attorney was acting as assistant counsel. The mere division of labor does not necessarily determine which attorney in a co-counsel situation is the lead attorney. Rules of the N.C. State Bar, Art. VII, § 7.3(a).

**Am Jur 2d, Criminal Law § 750.**

5. **Criminal Law § 412 (NCI4th)— opening statement—references to victim's physical condition and work history**

The prosecutor's references in his opening statement to a murder victim's physical condition and work history were not so grossly improper that the trial court abused its discretion by failing to intervene *ex mero motu*.

**Am Jur 2d, Trial § 522.**

STATE v. HOWELL

[335 N.C. 457 (1994)]

6. **Evidence and Witnesses §§ 190, 740 (NCI4th)— victim's physical condition and work history—testimony not plain error**

The admission of testimony by a murder victim's wife and daughter describing the victim's physical condition and work history was not plain error since the jury probably would not have reached a different result absent this testimony.

**Am Jur 2d, Appeal and Error §§ 797, 798, 803; Evidence §§ 353, 439.**

7. **Appeal and Error § 147 (NCI4th)— admissibility of evidence— absence of specific grounds for objection—appellate review**

Defendant failed to preserve for appellate review the admissibility of a letter on the grounds that it was irrelevant and referred to plea negotiations between defendant and the prosecutor because defendant's objection "for the record" was not a statement of these specific grounds, especially in light of defendant's previous objection based on the lack of a time frame establishing when the letter was received. N.C. R. App. P. 10(b)(2).

**Am Jur 2d, Appeal and Error §§ 545 et seq.**

8. **Criminal Law §§ 442, 461 (NCI4th)— closing arguments—no gross impropriety**

The prosecutor's closing arguments in a capital trial, including a statement allegedly unsupported by evidence that the victim's wife knew something was wrong because the victim "hadn't called that night" and an argument urging the jury to act as the voice of the community, were not so grossly improper as to require the trial court to intervene *ex mero motu.*

**Am Jur 2d, Trial §§ 569, 609.**

9. **Homicide § 489 (NCI4th)— premeditation and deliberation— lack of provocation—propriety of instruction**

There was sufficient evidence in a first-degree murder trial for the court to instruct on lack of provocation as circumstantial evidence of premeditation and deliberation where the evidence tended to show that defendant broke into the victim's residence to rob him and that the victim was in poor physical condition; the record does not reflect any showing of provocation by the victim; defendant's own statements to individuals after the murder did not suggest that the victim

was argumentative or confrontational; and the medical examiner's testimony that the victim died from a gunshot wound to the head at a point behind his left ear would permit the jury to infer that the victim was not provoking defendant at the time of the homicide.

**Am Jur 2d, Homicide § 501.**

10. **Burglary and Unlawful Breakings § 68 (NCI4th) — first-degree burglary — sufficient evidence of breaking**

There was sufficient evidence of a breaking to support submission of a charge of first-degree burglary to the jury where it tended to show that the back door of the victim's mobile home was the one that everyone used; the weather was stormy on the night in question which prompted the victim's wife to leave for her daughter's home; when she left the mobile home, the victim was sitting at a dining room table with his back to the door; it is reasonable to infer that the victim would not be sitting at a dining room table on a stormy night with the door completely open; the victim was robbed and shot to death; and when the victim's wife returned home that night she got her house key out because she was expecting the door to be closed and locked as usual. It was for the jury to determine from the evidence whether it was satisfied beyond a reasonable doubt that the door was at least partially closed on the night in question so as to require that defendant use some force in order to enter the victim's dwelling.

**Am Jur 2d, Burglary § 50.**

11. **Criminal Law § 1341 (NCI4th) — first-degree murder — premeditation and deliberation — aggravating circumstances — pecuniary gain and burglary — submission of both erroneous**

The trial court in a capital sentencing proceeding for a first-degree murder based on premeditation and deliberation committed prejudicial error by submitting to the jury both the aggravating circumstance that the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6), and the aggravating circumstance that the murder was committed while defendant was engaged in the commission of a burglary, N.C.G.S. § 15A-2000(e)(5), where the undisputed evidence established that the motive for the burglary was pecuniary gain, since the same evidence was used to support both aggravating circumstances.

STATE v. HOWELL

[335 N.C. 457 (1994)]

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed for pecuniary gain, as consideration or in expectation of receiving something of monetary value, and the like—post-Gregg cases. 66 ALR4th 417.**

12. **Criminal Law § 1155 (NCI4th)— armed robbery—deadly weapon as aggravating circumstance—conflict in record—resentencing**

Defendant is entitled to be resentenced for robbery with a dangerous weapon because of a conflict in the record as to whether the trial court improperly found as an aggravating factor that defendant was armed with a deadly weapon at the time of the crime. N.C.G.S. § 15A-1340.4(a)(1).

**Am Jur 2d, Criminal Law §§ 598, 599.**

Justice MITCHELL dissenting in part.

Justice MEYER joins in this dissenting opinion.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Hight, Jr., J., at the 12 November. 1991 Criminal Session of Superior Court, Johnston County. Defendant's motion to bypass the Court of Appeals as to his convictions of robbery with a dangerous weapon, first-degree burglary, and conspiracy to commit burglary was allowed 2 December 1992. Heard in the Supreme Court 10 May 1993.

*Michael F. Easley, Attorney General, by G. Patrick Murphy and John H. Watters, Special Deputy Attorneys General, for the State.*

*Sam J. Ervin, IV, for defendant-appellant.*

FRYE, Justice.

Defendant appeals from the imposition of a sentence of death for a conviction of first-degree murder. We find no reversible error in the pretrial or guilt-innocence phases of defendant's trial. We do, however, find error in the sentencing phase requiring a new capital sentencing hearing. For the reason stated herein, we also remand the judgment sentencing defendant for robbery with a dangerous weapon.

STATE v. HOWELL

[335 N.C. 457 (1994)]

Defendant was indicted for first-degree murder, robbery with a dangerous weapon, first-degree burglary, and conspiracy to commit burglary. In a capital trial, the jury returned a verdict finding defendant guilty of the first-degree murder of Leland Mac Grice (Mr. Grice) on the bases of malice, premeditation and deliberation and under the felony murder rule using both robbery with a dangerous weapon and first-degree burglary as the predicate felonies. The jury also found defendant guilty of robbery with a dangerous weapon, first-degree burglary, and conspiracy to commit burglary. After a capital sentencing proceeding held pursuant to N.C.G.S. § 15A-2000, the jury recommended and the trial court imposed a sentence of death for the first-degree murder conviction. On the same date, the trial court imposed sentences for the other convictions as follows: forty years imprisonment for robbery with a dangerous weapon, fifty years imprisonment for first-degree burglary, and three years imprisonment for conspiracy to commit burglary. Defendant gave oral notice of appeal on 26 November 1991. An order staying execution was entered by this Court on 8 January 1992.

Evidence presented at defendant's trial shows the following: On 1 May 1989, the victim, Mr. Grice, and his wife, Ruby Grice (Mrs. Grice), were living in a mobile home off rural paved road 1934 north of Selma, North Carolina. On the night of 1 May 1989, severe storm warnings had been broadcast for the area. Because Mrs. Grice was afraid of stormy weather, she left their mobile home at approximately 8:20 p.m. and drove to the residence of her daughter, Carol Daniels (Mrs. Daniels), less than a mile down the road.

Mrs. Grice left her daughter's house at approximately 11:20 p.m. and drove home. Upon arriving, Mrs. Grice entered through the back door and found papers and contents of drawers and cabinets scattered about the floor. The television was on and the sound was turned up. In the living room, Mrs. Grice found her husband face down on the floor with a bullet hole in his head. A .22-caliber shell casing was on the floor at his right side, and his wallet was lying on his back. Mrs. Grice called her daughters, Mrs. Daniels and Sherry Hicks (Ms. Hicks), who arrived within minutes.

Detective Tommy Beasley of the Johnston County Sheriff's Department was on duty on 1 May 1989 and responded to a call

to the Grice residence. Upon arriving at the scene, Beasley was told by rescue squad personnel that the victim had no vital signs.

Dr. Thomas B. Clark, the medical examiner, testified that an autopsy of the victim revealed a one-inch abrasion on his forehead and a gunshot wound behind his left ear, five and one-half inches from the top of his head and three inches to the left of the posterior midline. The wound track proceeded left to right. The projectile entered the left occipital bone and lodged in the soft tissue behind the jaw bone on the right side. Dr. Clark opined that the cause of death was hemorrhaging along the wound track caused by the bullet.

On 18 June 1989, Detective Beasley received information that John Horton could help in the Grice homicide. Beasley met with Horton on that date at the home of Horton's sister, Tammy Horton. Beasley advised Horton that he was a detective with the sheriff's department and informed him that he needed to talk with him. At this point Horton said he was ready to talk. Horton then gave Detective Beasley a statement of the events of 1 May 1989.

In keeping with his statement to Detective Beasley, Horton testified at trial that on 1 May 1989 he lived with his girlfriend, Annette Cooper; his sister, Tammy Horton; and her boyfriend, Tommy Ray. Horton stated that shortly after he arrived home at approximately 5:00 or 5:30 p.m. on the night in question, Gordon Michael Marlow[1] and defendant came by Horton's mobile home in defendant's truck. Defendant asked Horton if he would "drive for him later that night." Horton asked defendant why he wanted him to drive, but defendant gave no reason. Horton then told defendant he would drive for him that night. Around 9:00 p.m., Marlow and defendant came back to Horton's mobile home and Horton went outside and spoke with them. Defendant again asked Horton to drive. Horton testified that he could tell that Marlow and defendant were "doing lacquer thinner" because he could smell it. Horton agreed to drive and went back to the mobile home to dress. Horton testified that he assumed Marlow and defendant wanted him to drive so that they could sniff more lacquer thinner.

---

1. Marlow was tried capitally in the Superior Court, Johnston County on the same charges as defendant. His convictions and sentences were upheld by this Court in *State v. Marlow*, 334 N.C. 273, 432 S.E.2d 275 (1993).

STATE v. HOWELL

[335 N.C. 457 (1994)]

Horton testified that he, Marlow, and defendant got into defendant's pickup truck with defendant driving and left the mobile home. Horton noticed that defendant's .22-caliber bolt-action rifle was in the cab. Horton had seen and fired the gun previously. He testified that defendant wore camouflage clothing and that Marlow was dressed in black pants and a black shirt. After driving around for a while, defendant asked Horton to drive. Defendant and Marlow, who had the rifle, got into the back of the truck.

Horton stated that defendant spoke to him through the sliding rear window of the cab and told him to drive slowly down the dirt road because he and defendant were going to jump out. Defendant also told Horton that after he and Marlow jumped out, Horton was to circle the dirt road twice and then they would jump back into the rear of the truck. Defendant further told Horton that if Horton did not see them the second time around, he was to go down rural paved road 1934 to a red barn where they would meet him.

Horton testified that he slowly proceeded down the dirt road adjacent to the Grice residence and that Marlow and defendant jumped out. As they did so, Horton heard one of them say, "Let's get it over with." As the two men ran in the direction of the Grice residence, defendant had something tucked under his arm and Marlow had the rifle.

Horton stated that he drove down the dirt road for approximately one and one-half miles until it intersected with a paved road. He then turned left on the paved road and looped back around to the start of the dirt road at the intersection next to the Grice residence. Horton testified that he did not see anyone and, therefore, he looped around again. On his second time around, Horton saw Marlow running across the field with the rifle. Marlow jumped into the back of the truck and instructed Horton to turn around and go back to the end of the dirt road and turn left on rural paved road 1934. Horton stated that he followed Marlow's instructions. When he got to the barn between the Grice and Daniels residences, Marlow screamed, "slow down." At that point, defendant jumped into the back of the truck. Horton proceeded down the road until it intersected Highway 39. Marlow and defendant then got back into the cab.

Horton testified that once Marlow and defendant were inside the cab, defendant asked, "who reloaded it?" Marlow responded

that he had. Horton stated that as he drove back to his mobile home, Marlow and defendant were "joking, carrying on." Once back at Horton's home, Marlow "pulled out a black bag" and threw it into the dash. Horton testified that the bag sounded like it had change in it. As Horton walked around the truck, he saw a duffel bag with a tape player inside, which was later identified as belonging to the Grices. Horton stated that he then went into the mobile home and went to bed. He testified that he did not know about the Grice murder until he heard the news the following morning.

Defendant did not testify at trial but some of the State's witnesses had testified that defendant and Marlow came looking for Horton before he got home on 1 May 1989. In order to counter this evidence offered by the State at the guilt-innocence phase, defendant presented the testimony of Kermit Matthews. In May of 1989, Matthews employed Marlow and defendant in his tire business. Although he had no documentary proof, Matthews testified that he believed Marlow and defendant went to Virginia on 1 May 1989 to pick up a load of tires. If they had travelled to Virginia that day, they would have left around 3:00 a.m. and returned home around 6:00 to 8:00 p.m.

During the capital sentencing proceeding, defendant presented evidence on his behalf through several witnesses. Two Johnston County Sheriff's Department employees testified that defendant was very cooperative and pleasant. Virginia Howell, defendant's half-sister, testified that defendant was a great brother and that he got along well with his father and grandparents. Patricia Oliver, defendant's mother, testified that he was her oldest child. Ms. Oliver testified that defendant's father beat her and defendant, so she divorced him after three years of marriage. She also testified that defendant's sister, Mindy, had terminal cancer and that defendant was the only person who could save her because his bone marrow would match hers.

Additional evidence will be discussed as it becomes relevant to a fuller understanding of the specific issues raised on appeal.

## I. PRETRIAL ISSUES

[1] In defendant's first assignment of error, he contends that the trial court erred by refusing to accept his proffered guilty plea. On 13 March 1990, defendant tendered a plea of guilty to first-

degree murder, first-degree burglary, conspiracy to commit second-degree burglary, and robbery with a dangerous weapon. The plea of first-degree murder was tendered upon a theory of felony murder. Judge Wiley F. Bowen rejected defendant's plea based on the potential existence of at least one aggravating circumstance in this case. Defendant later filed a Motion to Require Compliance With Plea Bargain which was heard by Judge Robert H. Hobgood and denied. Defendant contends that both Judge Bowen and Judge Hobgood erred by rejecting his proffered guilty plea.

Our death penalty statute does not permit a defendant to plead guilty to first-degree murder and by prearrangement with the State be sentenced to life imprisonment without the intervention of a jury. *State v. Johnson*, 298 N.C. 47, 257 S.E.2d 597 (1979). Nor does our death penalty statute permit the State to recommend to the jury during the sentencing proceeding a sentence of life imprisonment when the State has evidence from which a jury could find at least one aggravating circumstance beyond a reasonable doubt. *Id.* In the instant case, there was evidence tending to show the existence of at least one aggravating circumstance, *i.e.*, that the murder was committed while defendant was engaged in the commission of the felony of burglary. N.C.G.S. § 15A-2000(e)(5) (1988). Thus, the trial judge was not required to accept a plea of guilty to first-degree murder based solely on the felony murder rule since this might preclude the use of the underlying felony as an aggravating circumstance.

[2] Defendant contends that there are reasons other than the absence of evidence of a statutory aggravating circumstance which can preclude sentencing a defendant to death. During the hearing with Judge Bowen regarding the proffered plea, the State indicated that it would have trouble showing who the actual trigger man was. Therefore, defendant argues that *Tison v. Arizona*, 481 U.S. 137, 95 L. E. 2d 127, *reh'g denied*, 482 U.S. 921, 96 L. E. 2d 698 (1987), precludes his sentence of death. In *Tison*, the United States Supreme Court held that the death penalty could not be imposed upon a criminal defendant who did not actually kill, intend to kill, or participate in a major way in criminal conduct which resulted in death while acting with reckless indifference to human life. Here, however, the forecast of evidence at the hearing suggested that defendant was a major player in the events that occurred on 1 May 1989 leading to the murder of Mr. Grice; thus, *Tison* is not

controlling. It was therefore not error for the trial court to reject the proffered plea.

[3] In defendant's second assignment of error, he contends the hearing judge erred in denying his motion to suppress items seized from his truck. Prior to ruling on the motion, Judge Bowen held a hearing and made factual findings in pertinent part as follows:

1. On June 18, 1989, at 11:15 p.m. defendant, Franklin Dwayne Howell, was arrested at his residence [pursuant to valid arrest warrants] on charges of First Degree Burglary and First Degree Murder.

. . . .

3. Defendant came to the door with a drawn .44 special revolver.

4. All of the officers were armed; however, none of the officers ever drew their pistols.

5. Deputy Billie Williams and Stg. [sic] Ronald Medlin each held a warrant and arrested defendant.

6. Thereafter Detective Tommy Beasley advised defendant he had information that his 1977 Ford truck, blue and white in color, had been used as transportation in the Grice case. Defendant testified that the 1977 Ford truck, blue and white in color, license plate number CRK-9745, is his truck.

7. Detective Beasley further advised defendant that he was going to do an inventory of the vehicle and have same stored as evidence.

8. Defendant advised Detective Beasley "OK."

9. Defendant testified at the suppression hearing he understood that Detective Beasley was going to search his truck.

10. Major Bob Atkinson went over with and read to defendant a "Permission to Search Person, Premises, and Auto" form, introduced into evidence as State's Exhibit #1.

. . . .

STATE v. HOWELL

[335 N.C. 457 (1994)]

12. State's Exhibit #1 was signed by defendant below the last paragraph and witnessed by Major Atkinson and Deputy Billie Williams.

. . . .

17. Detective Beasley and Major Atkinson did not coerce, threaten, or promise defendant anything to obtain defendant's consent to search his property or his truck.

Findings of fact when supported by competent evidence are binding on appeal. *State v. Davis*, 305 N.C. 400, 290 S.E.2d 574 (1982). However, conclusions of law are questions of law which are fully reviewable by this Court on appeal. *State v. Barber*, 335 N.C. 120, 436 S.E.2d 106 (1993). The findings of fact set forth in pertinent part above are supported by competent evidence in the record and are binding on appeal. These findings of fact support the hearing judge's conclusion that defendant knowingly, voluntarily, and intelligently consented to the search of his 1977 Ford truck. Thus, the judge did not err in denying defendant's motion to suppress the items seized from the truck.

## II. GUILT-INNOCENCE PHASE ISSUES

[4] In defendant's third assignment of error he contends the trial court erred by allowing Johnny Morgan to act as "defacto" lead counsel in violation of the Rules and Regulations Relating To The Appointment Of Counsel For Indigent Defendants adopted pursuant to N.C.G.S. § 7A-459. These rules and regulations provide, inter alia:

No attorney shall be appointed to represent at the trial level any indigent defendant charged with a capital crime:

(a) Who has less than five years experience in the general practice of law, provided that the court may, in its discretion, appoint as assistant counsel an attorney who has less experience; . . . .

Rules of the North Carolina State Bar, Art. VII, § 7.3(a) (1993).

James Levinson was appointed lead counsel for defendant in December 1990, after defendant's prior appointed attorneys were permitted to withdraw. At the same time Morgan, who was licensed in September 1987, was appointed assistant counsel. In April 1991, Levinson moved and was allowed to withdraw as counsel and the court appointed Robert L. Anderson. The issue of who was serving

as lead counsel came up at a hearing before Judge Anthony Brannon on 29 July 1991. Both Morgan and Anderson stated for the record that Anderson would serve as lead counsel and Morgan as assistant counsel. Defendant stated on the record that he consented to this assignment of duties.

Defendant now contends that the division of labor between Morgan and Anderson demonstrates that Anderson's status as lead counsel was purely nominal and, as a result, defendant was deprived of his right to be represented by a lead counsel with "five years experience in the general practice of law" and should be awarded a new trial. Essentially, defendant contends that Morgan dominated his representation by examining and cross-examining more witnesses than Anderson, interposing more objections, and by acting as "defacto" lead counsel. However, mere division of labor does not necessarily determine which attorney in a co-counsel situation is the lead attorney. Anderson cross-examined a number of the State's key witnesses, argued points of law to the court, and gave closing arguments at both the guilt-innocence phase and at the sentencing hearing. Anderson fully participated in the trial of the case with the understanding of defendant, counsel, and the court that Anderson was acting as lead attorney and that Morgan was acting as assistant counsel. Under these circumstances, defendant's assignment of error is without merit.

[5] In defendant's fourth assignment of error, he contends that the trial court erred by permitting the prosecutor to 1) refer to Mr. Grice's physical condition and work history in his opening statement, and 2) to elicit testimony concerning Mr. Grice's physical condition and work history from two of the State's witnesses.

Defendant concedes that he did not object to the prosecutor's opening statement. This Court has stated:

[i]n capital cases, an appellate court may review the prosecution's closing argument, notwithstanding the fact that no objection was made at trial. However, review is limited to an examination of whether the argument was so grossly improper that the trial judge abused his discretion in failing to intervene *ex mero motu*. *State v. Craig*, 308 N.C. 446, 302 S.E.2d 740, *cert. denied*, 464 U.S. 908, 78 L.Ed.2d 247 (1983); *State v. Johnson*, 298 N.C. 355, 259 S.E.2d 752 (1979). Reason dictates that the same standard apply to situations where no objection was made to the opening statement and we so hold.

*State v. Gladden,* 315 N.C. 398, 417, 340 S.E.2d 673, 685 (1986). Upon review of the entire opening statement, we conclude that the prosecutor's references to the victim's physical condition and work history were not so grossly improper that the trial court abused its discretion by failing to intervene *ex mero motu.*

**[6]** Defendant also takes issue with the testimony of Mrs. Grice and Mrs. Daniels describing Mr. Grice's physical condition and work history in response to questions by the prosecutor. According to the State, this evidence was relevant because it had a tendency to make the existence of a physical confrontation between the victim and defendant less likely. A physical confrontation, the State contends, could be some evidence of provocation on the part of the victim. Defendant, on the other hand, argues that this evidence was irrelevant and extremely prejudicial. Nevertheless, defendant interposed no objection to this evidence at trial.

Since defendant did not object to this testimony, this assignment of error must be considered under the plain error rule. *See State v. Bronson,* 333 N.C. 67, 423 S.E.2d 772 (1992). Under this rule, defendant may prevail only if he can demonstrate that, absent the alleged error, the jury probably would have returned a different verdict. *Id.* at 75, 423 S.E.2d at 777. Considering the testimony of Mrs. Grice and Mrs. Daniels in light of all the evidence presented at trial, we are not convinced that, absent their testimony describing the victim's physical condition and work history, the jury probably would have reached a different verdict. Accordingly, defendant cannot show error under the plain error rule.

In defendant's fifth assignment of error, he contends that the trial court erred by permitting the State to introduce a letter written by him to Tammy Horton following his arrest for the Grice murder. During her testimony, Ms. Horton identified State's Exhibits 60 through 63B which included an envelope and three letters Ms. Horton had received from the defendant when he was in pretrial confinement on these charges. When the State sought introduction of the exhibits, defendant objected and a *voir dire* was conducted. As the basis for his objection, defense counsel stated that he objected to the lack of time frame for establishing when the letters could have been written because they were not dated. The witness was then questioned about when she received the letters and she responded that she had received all the letters since the defendant had been in jail. Following *voir dire,* and after laying a proper

STATE v. HOWELL

[335 N.C. 457 (1994)]

foundation establishing a time frame for when the letters were received, the State sought introduction of these exhibits again. Defendant objected again "for the record" and the trial judge overruled the objection. After the objection was overruled, Ms. Horton read one of the letters, State's Exhibit Number 61, to the jury.

[7] Defendant now argues that his objection should have been sustained because this letter was not relevant and it referred to plea negotiations between defendant and the prosecutor. Defendant's objection "for the record" was not a statement of these specific grounds, especially in light of his previous objection based on the lack of time frame establishing when the letters were received.

> In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.

N.C. R. App. P. 10(b)(1). Here, defendant did not state the specific grounds for the objection and the specific grounds were not apparent from the context. Defendant has therefore failed to preserve the question for appellate review. Accordingly, this assignment of error is rejected.

[8] In defendant's sixth assignment of error, he contends that the trial court erred by refusing to intervene *ex mero motu* during the State's closing argument at the guilt-innocence phase. Control of counsel's argument is largely left to the trial court's discretion. *State v. Zuniga*, 320 N.C. 233, 357 S.E.2d 898, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987). When a defendant does not object to an alleged improper jury argument, the trial judge is not required to intervene *ex mero motu* unless the argument is so grossly improper as to be a denial of due process. *State v. Brown*, 320 N.C. 179, 358 S.E.2d 1, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987).

Defendant argues that the prosecutor made a number of improper arguments including: "serious factual misstatements;" urging the jury to convict defendant on the basis of "completely irrelevant considerations;" misstating the controlling law and discussing defendant's attitude at length. As an example of a "serious factual misstatement," defendant contends that there was no evidence to support the prosecutor's argument that Mrs. Grice knew something

was "wrong" because "Mr. Grice hadn't called that night." Defendant also argues that the prosecutor's argument urging the jury to act as the voice of the community went beyond permissible limits encouraging the jury to convict defendant on the basis of "completely irrelevant considerations." After reviewing the transcript, we conclude that the prosecutor's closing arguments were not so grossly improper as to constitute a denial of defendant's due process rights. *See id.* Therefore, the trial court did not err by not intervening *ex mero motu.*

[9]  In his seventh assignment of error, defendant argues that the trial court erred by instructing the jury that it could infer the existence of premeditation and deliberation from, among other things, the absence of provocation by the victim. The portion of the jury charge objected to by defendant is the underlined clause in the following excerpt of the jury charge:

> Neither premeditation nor deliberation is usually susceptible of direct proof. They may be proved by proof of circumstances from which they may be inferred such as the lack of provocation by the victim; the conduct of the defendant before, during and after the killing; and the manner in which or the means by which the killing was done.

(Emphasis added.) In considering a similar assignment of error in *State v. Thomas,* 332 N.C. 544, 562-64, 423 S.E.2d 75, 85-86 (1992), we said:

> The examples listed in the above instruction, which is taken directly from the North Carolina Pattern Jury Instructions, N.C.P.I. — Crim. 206.13 (1989), "are merely examples of circumstances which, if found, the jury could use to infer premeditation and deliberation. It is not required that each of the listed elements be proven beyond a reasonable doubt before the jury may infer premeditation and deliberation." *State v. Cummings,* 326 N.C. 298, 315, 389 S.E.2d 66, 76 (1990). However, when the trial judge focuses his instruction upon one or more of such elements as circumstantial proof of premeditation and deliberation, those focused upon must be supported by competent evidence. *State v. McDowell,* 329 N.C. 363, 388, 407 S.E.2d 200, 214 (1991).

*Id.* at 563, 423 S.E.2d at 86.

We find that, when viewed in the light most favorable to the State, there is competent evidence to support an instruction on lack of provocation by the victim. First, the record does not reflect any showing of provocation by Mr. Grice. Second, defendant's own statements to individuals after the murder did not suggest that Mr. Grice was in any way argumentative or confrontational. Third, Dr. Clark testified that Mr. Grice died as a result of a gunshot wound to the head which entered his body at a point behind his left ear. This evidence would permit a jury to infer that the victim was not provoking defendant at the time of the homicide. When combined with the testimony regarding the victim's poor physical condition and the circumstances under which defendant entered the residence, this evidence is sufficient for the trial court to instruct on lack of provocation as circumstantial evidence of premeditation and deliberation.

[10] In defendant's final assignment of error in the guilt-innocence phase, he contends the trial court erred in failing to dismiss the first-degree burglary charge at the close of all the evidence due to the insufficiency of the evidence.

> The elements of burglary in the first-degree are: (1) the breaking (2) and entering (3) in the nighttime (4) with the intent to commit a felony (5) into a dwelling house or a room used as a sleeping apartment (6) which is actually occupied at the time of the offense.

State v. Davis, 282 N.C. 107, 116, 191 S.E.2d 664, 670 (1972) (citations omitted). Defendant argues that the evidence is insufficient to establish the occurrence of a breaking which consists of any force, however slight, "employed to effect an entrance through any usual or unusual place of ingress, whether open, partly open or closed." State v. Jolly, 297 N.C. 121, 127-128, 254 S.E.2d 1, 5-6 (1979) (quoting State v. Wilson, 289 N.C. 531, 223 S.E.2d 311 (1976)). Absent evidence of a forced entry giving rise to the inference of a breaking, a breaking may be proved by circumstantial evidence. State v. Madden, 212 N.C. 56, 192 S.E.2d 859 (1937). While circumstantial evidence in burglary cases usually includes testimony that prior to entry all doors and windows were closed, evidence of habit or custom is also admissible to establish an essential element of the crime. See State v. Simpson, 299 N.C. 335, 261 S.E.2d 818 (1980).

STATE v. HOWELL

[335 N.C. 457 (1994)]

In support of its position that there was sufficient evidence of the breaking, the State pointed to evidence such as the testimony of Sharon Hicks who said that the back door of the residence was the one that everyone used and the testimony of Mrs. Grice that when she left the residence, Mr. Grice was sitting at the end of the table in the dining room with his back to the door. The door in question was the only one at that entry point and there was no storm door. The weather was stormy in the area on 1 May 1989 which prompted Mrs. Grice to leave for her daughter's home. Although Mrs. Grice did not say that she closed the door when she left, it is reasonable to infer that, on a stormy day, Mr. Grice would not be sitting at the dining room table with the door completely open. Additionally, Mrs. Grice testified that when she returned home that night she got her house key out because she was expecting the door to be closed and locked as usual.

It was for the jury to determine from the evidence whether it was satisfied beyond a reasonable doubt that the door was at least partially closed on the night in question so as to require that defendant use some force in order to enter the Grice dwelling. See State v. Simpson, 299 N.C. 335, 261 S.E.2d 818. Viewing the evidence in the light most favorable to the State, we find it to be sufficient to establish the breaking element.

## III. CAPITAL SENTENCING ISSUES

In his next eight assignments of error, defendant contends that the trial court committed several errors which deprived him of a fair capital sentencing proceeding. We find merit in one of his assignments of error and order a new capital sentencing hearing on that basis. We need not address the other alleged errors as they are unlikely to recur at the new capital sentencing hearing.

[11]   Over defendant's objection, the trial court, at the capital sentencing proceeding, submitted to the jury as statutory aggravating circumstances whether the murder of Mr. Grice "[w]as . . . committed for pecuniary gain," N.C.G.S. § 15A-2000(e)(6), and whether the murder was "committed while [defendant] was engaged in the commission of a burglary." N.C.G.S. § 15A-2000(e)(5). The jury answered "yes" to both. Defendant contends that the trial court erred by permitting the jury to consider both the (e)(5) and the (e)(6) aggravating circumstances. We agree with defendant that it was improper for the trial court to submit two aggravating circumstances supported by the same evidence. See State v.

*Quesinberry*, 319 N.C. 228, 239, 354 S.E.2d 446, 453 (1987); *State v. Goodman*, 298 N.C. 1, 29, 257 S.E.2d 569, 587 (1979). Thus, defendant is entitled to a new capital sentencing proceeding.

In *Quesinberry*, the jury found defendant guilty of first-degree murder based upon both felony murder and premeditation and deliberation. At the penalty phase of defendant's capital trial, the trial court submitted for the jury's consideration whether the murder was committed during the course of an armed robbery, N.C.G.S. § 15A-2000(e)(5), and whether the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6). This Court stated:

> The new question now before us — one of first impression in our jurisdiction — is whether these two factors, when submitted together for purposes of sentencing a defendant convicted of first degree murder on the basis of premeditation and deliberation, are redundant. We conclude that one plainly comprises the other. Although the pecuniary gain factor addresses motive specifically, the other cannot be perceived as conduct alone, for under the facts of this case the motive of pecuniary gain provided the impetus for the robbery itself. Admittedly, situations are conceivable in which an armed robber murders motivated by some impulse other than pecuniary gain, *e.g.*, where the robbery is committed to obtain something of purely reputational or sentimental, rather than pecuniary, value. The facts of this case, though, reveal that defendant murdered the shopkeeper for the single purpose of pecuniary gain by means of committing an armed robbery.

*Id.* at 238, 354 S.E.2d at 452.

*Quesinberry* controls the instant case. Here, the undisputed evidence establishes that the motive for the burglary of the Grices' mobile home was pecuniary gain. Thus, the same evidence was used to support both the (e)(5) and (e)(6) aggravating circumstances. Because it is impossible now to determine the weight ascribed to each aggravating circumstance by the jury in recommending the sentence of death, we are unable to find the error harmless beyond a reasonable doubt. *See, e.g., State v. Quesinberry*, 319 N.C. 228, 354 S.E.2d 446; *State v. Davis*, 325 N.C. 607, 386 S.E.2d 418 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990). Defendant is accordingly entitled to a new capital sentencing hearing pursuant to N.C.G.S. § 15A-2000(d)(3).

STATE v. HOWELL

[335 N.C. 457 (1994)]

## IV. NON-CAPITAL SENTENCING ISSUES

[12]   We have held that defendant is entitled to a new capital sentencing hearing for the first-degree murder conviction. Defendant should also be resentenced on the robbery with a dangerous weapon conviction due to a conflict in the record as to whether the trial court improperly found as an aggravating factor that "defendant was armed with a deadly weapon at the time of the crime." N.C.G.S. § 15A-1340.4(a)(1) (1993). We find no other errors relating to the noncapital offenses.

GUILT PHASE: NO ERROR.

CAPITAL SENTENCING PHASE: NEW SENTENCING HEARING.

NON-CAPITAL SENTENCING PHASE: NO ERROR AS TO FIRST-DEGREE BURGLARY AND CONSPIRACY TO COMMIT BURGLARY; REMANDED FOR RESENTENCING ON ROBBERY WITH A DANGEROUS WEAPON.

Justice MITCHELL dissenting in part.

For reasons nearly identical to those in the dissent in *State v. Quesinberry*, 319 N.C. 228, 241, 354 S.E.2d 446, 454 (1987) (Martin, J., joined by Meyer and Mitchell, JJ., dissenting in part), I do not believe that the trial court erred in submitting both the aggravating circumstance that the murder was committed for pecuniary gain and the aggravating circumstance that the murder was committed while the defendant was engaged in the commission of a burglary. Therefore, I dissent from that part of the opinion of the majority awarding the defendant a new capital sentencing proceeding.

Justice Meyer joins in this dissenting opinion.